[No. F025520. Fifth Dist. Dec. 12, 1997.]

BETTY L. SPENCER, Plaintiff and Appellant, v.
MERCED COUNTY OFFICE OF EDUCATION, Defendant and
Respondent.

**COUNSEL**

Jones & Stephens and Michael D. Trainer for Plaintiff and Appellant.

Lozano, Smith, Smith, Woliver & Behrens, Ellen M. Jahn and Eric E. Hill for Defendant and Respondent.

## OPINION

**VARTABEDIAN, J.**—Betty L. Spencer appeals from the denial of her petition for relief from the claim presentation requirements of the Tort Claims Act (Gov. Code, § 900 et seq.).[1] ██ Spencer served the wrong public entity with her claim and now asserts the trial court abused its discretion when it denied her petition seeking relief on the ground of excusable neglect.[2] We affirm.

### FACTS AND PROCEEDINGS

According to Spencer, she suffered injuries on January 19, 1995, when, crossing the street as a pedestrian, she was hit by a car driven by Kenneth Stoddard; the driver purportedly acted in the course and scope of his employment with the Merced County Office of Education.

A police report listed Stoddard as the driver. The report recorded his employer as the "Merced Co. Dept. of Education" and contained his business phone number.

Spencer hired Attorney Paul Martyn to represent her. On March 2, 1995, Martyn sent a letter to Freese & Gianelli Claim Services making a claim for damages on behalf of Spencer. On March 8, 1995, Steven Oliver, an adjuster for Freese & Gianelli, replied to Martyn's letter. The body of the letter stated:

"This will acknowledge yours of March 2, 1995.

"I am at this time returning the original of your letter due to the fact that we cannot except [*sic*] a claim for damages on behalf of our client.

"Please be advise[d] that Kenneth Stoddard is an employee of the Merced County Office of Education, a public entity, who is a member of the Self-Insured Schools of Kern (SISK II), a JPA, likewise a public entity.

"Please refer to the Government Code commencing at 900 et seq. regarding filing such a claim.

"Notwithstanding the foregoing and the requirements of the Government Code, please feel free to communicate with me relative to your client's case.

---

[1] All future code references are to the Government Code.

[2] "An order denying a petition for relief from the claims filing requirements of the California Tort Claims Act (Gov. Code, § 810 et seq.) is an appealable order because it effectively determines a petitioner's right to relief from the claim presentation requirements. (*Santee* v. *Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 710 . . . .)" (*Munoz* v. *State of California* (1995) 33 Cal.App.4th 1767, 1772, fn. 1 [39 Cal.Rptr.2d 860].)

"This letter is not intended nor shall it be construed to be a waiver of any of the rights or defenses which Merced County Office of Education, Kenneth Stoddard or SISK II may have or hereafter accrue."

On March 14, 1995, Martyn wrote to the County of Merced requesting a claim form. Martyn received the claim form and filled it out, listing Stoddard as an employee of the County of Merced.

Spencer retained Michael D. Trainer from the law firm of Jones & Stephens on March 31, 1995. Martyn's file of the case was forwarded to Trainer. It contained the March 2, 1995, letter to Freese & Gianelli; the March 8, 1995, letter from Freese & Gianelli; the March 14, 1995, letter to the County of Merced; and a completed, but not filed, claim form against the County of Merced. Because of the completed claim form in the file, Trainer assumed the prior attorney had determined that the County of Merced was the correct public entity to be served. He also assumed that the Merced County Office of Education was a division of the County of Merced, based on its name. Trainer filed a government tort claim for Spencer against the County of Merced on April 26, 1995. The claim against the County of Merced was rejected, without a specification of reasons, on June 20, 1995.

On July 5, 1995, Trainer filed a complaint for Spencer against Stoddard and the County of Merced. On August 7, 1995, Victor Romano, an investigator working for Trainer, attempted to serve the summons, complaint and notice of status conference. Romano spoke to a Ronald Tiffe in an attempt to obtain access to the agent of service for the Merced County Office of Education. Tiffe transferred Romano's call to Chet Quaid, the attorney for the Merced County Office of Education. Quaid said he was aware of the issues of the case and would accept service. Romano and Quaid met on August 9, 1995, and Quaid accepted service for the Merced County Office of Education and for Stoddard, their employee.

The Merced County Office of Education answered the complaint on September 28, 1995, and simultaneously filed a motion for summary judgment. Only then did Trainer become aware that the wrong public entity had been served with the government tort claim.

An application for leave to present a late claim was filed with the Merced County Office of Education on October 6, 1995. The application was denied on October 16, 1995.

On December 7, 1995, Trainer filed a petition in Merced County Superior Court for relief from the provisions of section 945.4.

A hearing was held on January 9, 1996. The court questioned Trainer on the argument made by the Merced County Office of Education that the March 8, 1995, letter from Freese & Gianelli clearly put Trainer on notice who the proper entity was and what the proper procedures were to file a claim. Trainer responded to the court that he relied on the file he received from Martyn, believing that Martyn had done an investigation. The parties discussed the case of *Bettencourt* v. *Los Rios Community College Dist.* (1986) 42 Cal.3d 270 [228 Cal.Rptr. 190, 721 P.2d 71]. Trainer concluded by stating:

"The letter in my mind did not raise any red flags. Even though it did state that the Merced County Office of Education was a public entity, I didn't see anything that raised any red flags to me in conjunction with the completed claim form for the [*sic*] Merced County that it was indeed a separate and distinct entity.

"The verbiage in itself Merced County Office of Education didn't alert to me that it was separate and distinct. All of the state organizations are all under the State Board of Control such as the Department of Transportation, it is not a separate and distinct [*sic*] service on the state is sufficient for that public entity.

"I assumed that the County of Merced was the same type of funding and control and thus replied [*sic*] on my belief in that assumption."

The trial court found: "Okay. Well, in this matter, I find that there was a mistake, but that mistake was not an excusable negligence on the part of counsel. The letter of March 8th, 1995 from Mr. Oliver certainly put counsel on notice, if at the very least to do further investigation before assuming that the Office of Education was a component of the County of Merced."

The trial court additionally found that the Merced County Office of Education was not prejudiced by the delay because their claims adjuster was aware of the fact of the claim in March.

## Discussion

The Tort Claims Act requires that a claim for money or damages must first be presented to the pertinent public agency and rejected by it. A claim for personal injury must be presented to the public agency not later than six months after the accrual of the cause of action. (§ 911.2.)

■ "The claim presentation requirement serves several purposes: (1) it gives the public entity prompt notice of a claim so it can investigate the

strengths and weaknesses of the claim while the evidence is still fresh and the witnesses are available; (2) it affords opportunity for amicable adjustment, thereby avoiding expenditure of public funds in needless litigation; and (3) it informs the public entity of potential liability so it can better prepare for the upcoming fiscal year. [Citations.]

"Generally speaking, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented until a written claim has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board. (Gov. Code, § 945.4 . . . .) A 'public entity' includes the state, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the state. (Gov. Code, § 811.2.)

"Under Government Code section 945.4, presentation of a timely claim is a condition precedent to the commencement of suit against the public entity. However, if the injured party fails to file a timely claim, a written application may be made to the public entity for leave to present such claim. (Gov. Code, § 911.4, subd. (a).) If the public entity denies the application, Government Code section 946.6 authorizes the injured party to petition the court for relief from the claim requirements." (*Munoz* v. *State of California, supra,* 33 Cal.App.4th at pp. 1776-1777, fn. omitted.)

A petition under section 946.6 must be granted by the court if the claimant demonstrates by a preponderance of the evidence that the section 911.4 application to the public entity was made within a reasonable period of time, not to exceed one year after the accrual of the cause of action, and also proves that one of the four requirements of section 946.6, subdivision (c) is met. Spencer filed her petition under section 946.6 claiming she met the requirements of subdivision (c)(1). It provides:

"(c) The court shall relieve the petitioner from Section 945.4 if the court finds that the application to the board under Section 911.4 was made within a reasonable time not to exceed that specified in subdivision (b) of Section 911.4 and was denied or deemed denied pursuant to Section 911.6 and that one or more of the following is applicable:

"(1) The failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from Section 945.4."

Here, the trial court found Spencer had not established excusable neglect and denied the petition. ■ We review that finding under an abuse of discretion standard.

"Abuse of discretion is shown where uncontradicted evidence or affidavits of the plaintiff establish adequate cause for relief. . . .

"Government Code section 946.6 is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for the unwary. The remedial policy underlying the statute is that wherever possible cases should be heard on their merits. Thus, a *denial* of such relief by the trial court is examined more rigorously than where relief is granted and any doubts which may exist should be resolved in favor of the application. . . ." (*Munoz* v. *State of California, supra,* 33 Cal.App.4th at p. 1778.)

 Spencer claims the trial court abused its discretion in denying her request for relief and argues that this case is very similar to *Bettencourt* v. *Los Rios Community College Dist., supra,* 42 Cal.3d 270.

The Bettencourts' son died on November 29, 1982, on a field trip sponsored by Sacramento City College. (42 Cal.3d at p. 273.) Seventy-four days after the accident the Bettencourts retained counsel.

"Counsel immediately hired an investigator and commenced an investigation of the case. He then telephoned John Bukey, defendant's general counsel and director of legal services, to obtain more information about the accident. Counsel informed Bukey that he might file a wrongful death action on behalf of Braby's parents. Bukey was investigating the accident for the college, and he promised to send counsel all relevant materials.

"On February 15, 1983, four days after he was retained, counsel for plaintiffs filed a tort claim with the State Board of Control under the mistaken belief that the employees of Sacramento City College were employees of the State of California. Counsel discovered his error on March 25, 1983, when he learned that Sacramento City College employees were employees of the Los Rios Community College District. Counsel immediately telephoned Bukey informing him of the mistake and telling him that a petition for leave to present a late claim would be filed.

"Three days later and 119 days after accrual of the cause of action, counsel for plaintiffs filed an application for leave to present a late claim under section 911.4. Defendant denied the application. Counsel then filed a petition in the superior court, pursuant to section 946.6, seeking relief from the claim presentation requirement of section 945.4. The trial court denied

the petition . . . ." (*Bettencourt* v. *Los Rios Community College Dist., supra,* 42 Cal.3d at pp. 274-275, fns. omitted.)[3]

The Bettencourts appealed, claiming the trial court abused its discretion because counsel's mistake was excusable. The Supreme Court looked to the following in deciding whether counsel's mistake was excusable: "(1) [T]he nature of the mistake or neglect; and (2) whether counsel was otherwise diligent in investigating and pursuing the claim. [Citations.] In examining the mistake or neglect, the court inquires whether 'a reasonably prudent person under the same or similar circumstances' might have made the same error. [Citations.] In addition, '[u]nless inexcusable neglect is clear, the policy favoring trial on the merits prevails.' [Citation.]" (*Bettencourt* v. *Los Rios Community College Dist., supra,* 42 Cal.3d at p. 276.)

First, the Supreme Court looked to the reasonableness of the mistake. Counsel claimed he made an erroneous assumption that employees of Sacramento City College were state employees. The Supreme Court found counsel's assumption was reasonable. "Counsel practiced law in Walnut Creek, which is approximately 75 miles from Sacramento. He has never lived in Sacramento County, nor has he practiced law there. He was not familiar with the Los Rios Community College District or Sacramento City College. Moreover, public higher education in California represents a sometimes confusing blend of state and local control and funding. For example, the Los Rios Community College District, like all community college districts, is overseen by the state Community College Board of Governors, whose members are appointed by the Governor. (Ed. Code, § 71000.) Accordingly, it would not have been unreasonable for counsel to assume that Sacramento City College was part of the statewide higher education system." (*Bettencourt* v. *Los Rios Community College Dist., supra,* 42 Cal.3d at pp. 276-277.)

The district's counsel argued that the neglect of the Bettencourts' counsel was not reasonable, pointing to a letter received by counsel which indicated that Sacramento City College was part of the Los Rios Community College District. The Supreme Court did not accept the district's argument.

"The letter to which defendant refers was a cover letter accompanying the materials Bukey sent counsel on February 15th. It listed the materials enclosed and apologized for the delay in responding to counsel's request for information. Under these circumstances, a reasonable person, after skimming

---

[3]In 1983, section 911.2 required that the claim be presented to the public agency not later than the 100th day after the accrual of the cause of action. The requisite time period is now six months.

the body of the cover letter, would have focused his primary attention on the enclosures. It would not be unusual for the reader to devote little, if any, attention to the letterhead. The body of the cover letter said nothing about the Los Rios Community College District. Also, following his signature, Bukey was identified only as 'Director of Legal Services and General Counsel.'

"Counsel received the letter after he had filed his claim with the State Board of Control. Once an attorney has decided whom to sue, his attention understandably focuses on other aspects of the case. Correspondence from the opposing party discussing the merits of the case would not necessarily prompt him to reevaluate his choice of defendants." (*Bettencourt* v. *Los Rios Community College Dist., supra*, 42 Cal.3d at p. 277.)

Having found counsel's mistake to be reasonable, the Supreme Court next looked at the attorney's diligence.

"Here, although counsel made an erroneous assumption, which led him to sue the wrong public entity, he was otherwise diligent.

"Plaintiffs' counsel recognized that defendant was a public entity and moved swiftly to file a tort claim within the 100-day period. He started investigating plaintiffs' case the same day he was retained. He promptly spoke to defendant's legal advisor to request further information about the accident and immediately hired an investigator to work on the case. Within four days counsel had compiled enough information to file a claim. Since counsel's mistake here was reasonable under the circumstances and he was otherwise diligent, his neglect was excusable." (*Bettencourt* v. *Los Rios Community College Dist., supra*, 42 Cal.3d at p. 278, fn. omitted.)

The instant case is distinguishable from *Bettencourt*. In contrast to the letter in *Bettencourt*, the name of the public entity which employed Stoddard was specifically set forth in the body of the March 8, 1995, letter written by Oliver. The subject of the letter was advising counsel whom he should sue; the public entity was named in no uncertain terms. Reasonably astute persons reading the letter would focus their attention on the named public agency. Although Trainer was not the recipient of the letter, it was in the file he received and reviewed from Martyn. It raised a clear flag. Spencer has filed no authority which holds that an attorney acts reasonably when he relies entirely on the judgment of a prior attorney. Also, Trainer never claimed that the file received from Martyn demonstrated that Martyn had conducted an adequate investigation into the proper public entity. Additionally, the police report specifically listed the Merced County Office of

Education as the employer of Stoddard. Twice the public entity was specifically named. A reasonable person would have conducted a further inquiry.

Trainer had a readily accessible, valuable tool available to him to identify the proper public agency. Section 53051 requires public entities to file a form which lists facts to be included on the roster of public agencies. The roster of public agencies "lists among other things the names, official mailing addresses, and officers of public agencies in California. (§ 53051, subd. (a).) Each public agency is required to file this information with the Secretary of State and the county clerk of each county in which the agency maintains an office (§ 53051, subd. (a)), and the Secretary of State and all county clerks have a duty to establish and maintain the roster (§ 53051, subd. (c)). The 'public agency' required to file this information includes 'a district, public authority, public agency, and any other political subdivision or public corporation in the state, but does not include the state or a county, city and county, or city.' (§ 53050.) If a public agency fails to file the pertinent information the claim presentation requirements are eliminated (§ 946.4, subd. (a); cf. *Wilson* v. *San Francisco Redevelopment Agency* (1977) 19 Cal.3d 555, 559-562 . . . [discussing purposes of §§ 946.4 and 53051]), and a claim or late-claim application shall be deemed to have been properly presented if it is timely delivered or mailed in conformity with the information in the roster (§ 915, subd. (d)). These penalties certainly provide incentives for public agencies to comply with the filing requirements and potential claimants in turn should be motivated to consult the roster in every case. Indeed the roster provides claimants with the means to spring the traps for the unwary lurking in today's dense forest of public entities." (*Santee* v. *Santa Clara Office of Education* (1990) 220 Cal.App.3d 702, 714-715 [269 Cal.Rptr. 605].)[4] Trainer made no claim that he consulted the roster of public agencies.

This case also distinguishes itself from *Bettencourt* on the question of whether counsel was otherwise diligent in investigating and pursuing the claim. While Trainer was diligent in filing the complaint (albeit against the wrong public agency) and seeking to file a late claim, he presented absolutely no evidence that he had investigated the case, hired an investigator, or requested any information about the accident. The investigator in *Bettencourt* did all of these things.

Spencer also relies on *Kaslavage* v. *West Kern County Water Dist.* (1978) 84 Cal.App.3d 529 [148 Cal.Rptr. 729]. Kaslavage was injured when he dove from a pipe into a canal. An investigator began an investigation and learned that the canal was managed and controlled by the Buena Vista Water

---

[4]The Supreme Court in *Bettencourt* made no mention of this roster.

District. A claim was filed against the Buena Vista Water District. Kaslavage learned shortly after the claim period expired that the pipe was owned by a different public entity than the entity which owned the canal. This court found the failure to identify the second public entity which owned the pipe was excusable because Kaslavage made a substantial investigation. (*Id.* at p. 536.) The investigator spent "part of two days in investigation, including an on-site inspection and a check of the official records of the assessor's office. He also questioned four different public agencies in an attempt to obtain information." (*Id.* at p. 535.) Here, we find nothing in the record to suggest that Trainer made any investigation whatsoever.

Spencer also relies on *Flores* v. *Board of Supervisors* (1979) 13 Cal.App.3d 480 [91 Cal.Rptr. 717, 55 A.L.R.3d 925]. In *Flores*, the attorney candidly admitted that the lateness of his claim (23 days late) was due to his failure to open a file which would have reminded him of the 100-day limitation. (*Id.* at p. 483.) The appellate court found that calendar errors under appropriate circumstances are excusable. The case here does not involve a calendar error. We thus reject applying *Flores* to the present situation.[5]

Counsel's mistake was not reasonable under the circumstances and he was not otherwise diligent. As stated by this court in *Munoz* v. *State of California, supra,* 33 Cal.App.4th 1767: "A petitioner or counsel for a petitioner must show more than the mere failure to discover a fact until too late; he or she must establish the failure to discover that fact in the use of reasonable diligence. [Citation.]" (*Id.* at p. 1783.)[6]

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Stone (W. A.), Acting P. J., and Thaxter, J., concurred.

---

[5]We also note that the Supreme Court in *Bettencourt* found its facts to present a less culpable mistake than the mistake made by counsel in *Flores*. The *Bettencourt* court distinguished its facts from *Flores*; it did not approve of or follow *Flores*.

[6]Because Trainer's neglect was not excusable it is not necessary to discuss the question of prejudice to the Merced County Office of Education. (*Shank* v. *County of Los Angeles* (1983) 139 Cal.App.3d 152, 158 [188 Cal.Rptr. 644].)